ECF filed on:

JAN 1 5 2008

1  Stephanie L. Cooper, Esquire
Nevada Bar No. 5919
2  THE COOPER CASTLE LAW FIRM
f/k/a THE COOPER CHRISTENSEN LAW FIRM, LLP
3  820 South Valley View Blvd.
Las Vegas, NV 89107
4  (702) 435-4175/(702) 435 4181 (facsimile)
Loan No. 680412-00-142543 / Our File No. 08-01-0159
5  Attorney for Secured Creditor
Household Finance Realty Corporation of Nevada

6                    UNITED STATES BANKRUPTCY COURT
                            DISTRICT OF NEVADA
7

8  In re:

9                                              CHAPTER 13
           KATHLEEN STRADER,                   BANKRUPTCY NO.: 07-14923-BAM
                                               DATE:   February 13, 2008
10                Debtor(s)                     TIME:    1:30 PM
                                               MOTION NO.:
11

12              __MOTION FOR RELIEF FROM THE AUTOMATIC STAY__

13  TO:    **KATHLEEN STRADER  DEBTOR(S)**

14  TO:    **SAM BENEVENTO, ATTORNEY FOR THE DEBTOR(S)**

15  TO:    **RICK A. YARNALL, CHAPTER 13, TRUSTEE**

16  TO:    **ALL INTERESTED PARTIES**

17  TO:    **THE CLERK OF THE ABOVE-ENTITLED COURT**

18         Secured Creditor, Household Finance Realty Corporation of Nevada, hereby moves this

19  Honorable Court for an order terminating the automatic stay to allow Household Finance Realty

20  Corporation of Nevada  to proceed with and complete any and all contractual and statutory

21  remedies available pertaining to Household Finance Realty Corporation of Nevada's security

22  interest held in the real property located at 214 Pocahontas Court, Henderson, NV 89014

23  ("Property").  This Motion is made and based on an amalgamation of the instant pleading and

24  exhibits and all other pleadings, statements and schedules on file herein, as well as the Section

25  §362 Sheet attached hereto as Exhibit "A".

## FACTS

1.    On or about January 25, 2005, a loan was originate on the property located at 214 Pocahontas Court, Henderson, NV 89014, secured and encumbered by a Deed of Trust, which is in favor of Household Finance Realty Corporation of Nevada. A copy of the note and deed of trust are attached hereto as Exhibit "B".

2.    The principal balance of the note at the time of this motion is approximately $292,442.87.

3.    The regular monthly payment under the note is due on the 1st day of each month and the amount required is $2,150.61. A late fee applies for each and every payment, which is not received timely. Interest accrues at the rate of 8.2800 %.

4.    Debtor(s) filed their voluntary Chapter 13 on August 09, 2007.

5.    The Debtors' first post-petition payment was to be made on September 01, 2007.

6.    The Debtors' Chapter 13 plan was confirmed on November 02, 2007 and provides that Household Finance Realty Corporation of Nevada is to receive direct payments outside the plan for post-petition payments. The Debtors have failed to make said direct payments for the months of November 01, 2007 through January 01, 2008 to the First. The current post-petition arrearages as defined in the contractual note and deed of trust and the Bankruptcy Code are:

| | |
|---|---|
| 3 monthly payments at $2,150.61 | $6,451.83 |
| November 2007 through January 2008 | |
| Attorney Fees | $550.00 |
| Filing Fee | $150.00 |
| | |
| Total Post-Petition Arrearage | $7,151.83 |

7.    The Debtor owes a total of $7,009.41 in pre-petition arrears described as follows:

8.    The total amount of pre-petition and post-petition arrearages, $14,161.24 plus the principal balance $292,442.87 in the total amount of $306,604.11, along with the junior lien in the approximate amount of $68,299.00, a tax lien in the approximate amount of $1,600.00 and an HOA Lien in the approximate amount of $2,000.00, demonstrate a disproportionate debt balance encumbering the real property at issue as the estimated property value ranges from $286,000.00 to $296,000.00 as indicated in the Zillow estimated property value and the Debtor's own estimation in Schedule A of the voluntary petition. A copy of the Zillow estimated property value and in Debtor's schedule A of the petition are attached hereto as Exhibit "C."

## POINTS AND AUTHORITIES

The Bankruptcy Code provides for relief from the automatic stay:

> (1) For cause, including the lack of adequate protection of an interest in property of such party in interest;
> 11 U.S.C. §362(d)(1).

There is very little case law on what constitutes "cause" for purposes of §362(d)(1). Most of the reported §362(d)(1) cases involve the specific example of cause set out in the statute: "lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. §362(d)(1). The term "adequate protection" is not expressly defined in the Bankruptcy Code, §361 of the Code sets forth three non-exclusive examples of what may constitute adequate protection:

1.    Periodic cash payments;

2.    An additional replacement lien; or

3.    Such other relief as will result in the realization by the creditor of the indubitable equivalent of its interest in the property.

1

2    In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984); In re Monroe Park, 17 B.R. 934, 937 (D.Del.

3    1982).

4        The concept of adequate protection requires Debtors to propose some form of protection

5    that will preserve the secured creditor's interest in the collateral pending the outcome of the

6    bankruptcy proceeding.  In re Monroe Park, 17 B.R. at 937.

7        Debtor has not proposed or offered Household Finance Realty Corporation of Nevada any

8    form of adequate protection, and under 11 U.S.C. §362(d) the Debtor must demonstrate that

9    Household Finance Realty Corporation of Nevada has been adequately protected.  See also In re

10   Schaller, 27 B.R. 959 (W.D. Wis. 1983).  Any attempts by the Debtor to sell the property or

11   repay the arrearages past a six-month period will serve to create a default in violation of the basis

12   tenets of adequate protection rather than curing the same.

13       If there exists sufficient equity in secured property, the collateral itself may provide

14   adequate protection.  Although the existence of such an "equity cushion" as a method of adequate

15   protection is not specifically mentioned in the Code, it is the classic form of protection for a

16   secured debt.  In re Mellor, 734 F.2d at 1400.  An equity cushion is defined as the "value in the

17   property above the amount owed to the creditor with a secured claim, that will shield that interest

18   from loss due to any decrease in the value of the property during the time the automatic stay

19   remains in effect."  La Jolla Mortgage Fund v. Rancho El Cajon Assoc., 18 B.R. 283, 287 (S.D.

20   Cal 1982) citing from In re Roane, 8 B.R. 997, 1000 (E.D. Pa. 1981), Aff'd sub nom., Employees

21   Retirement Fund v. Roane, 14 B.R. 542 (E.D. Pa. 1981).

22       The Code provides that the valuation of collateral is to be made in light of both the reason

23   the valuation is being made, and the proposed use or disposition of the collateral.  3 Collier on

24   Bankruptcy, §506.04[2], at 506-25 (15th ed. 1979).  The valuation of collateral for purposes of a

25   lift-stay motion differs from that at the plan-confirmation stage.  In re B.B.T., 11 B.R. 224, 229

n.10 (D.Nev.1981). In the present context, for the determination of whether adequate protection exists, the appropriate value is the wholesale/liquidation value because the liquidation value is what a lift-stay movant will most likely receive upon termination of the automatic stay after all fees and costs of foreclosure, sale and conveyance are considered. Household Finance Realty Corporation of Nevada would assert that any equity cushion which might exist will be fully exhausted by interest which continues to accrue, foreclosure costs and attorneys' fees.

More importantly, even the actual existence of an equity cushion does not constitute adequate protection, especially if in the event where the Debtor is not paying taxes or insurance premiums on the property or is allowing the condition or value of the property to deteriorate. In re Pleasant Valley, Inc., 2 C.B.C.2d 325 (D.Nev. 1980); In re Bouquet Investments, Inc., 32 B.R. 988 (C.D. Cal. 1983). Relief for cause may also be granted where there has been improper management of collateral. See In re G.W.F. Investments, Ltd., 32 B.R. 308 (S.D. Ohio, 1983).Thus, relief from the automatic stay from Debtor and Bankruptcy Estate must be granted if the Debtor cannot establish that the property interest is adequately protected. In re Bradley, 3 B.R. 313, 315-16 (Bankr. E.D. Va. 1980).

Procedurally, a lift-stay movant has the burden to establish prima facie facts entitling it to relief. See In re Elmore, 94 B.R. 670 (Bankr. C.D.Cal. 1988). To establish a prima facie case, the moving creditor must demonstrate the following:

The Debtor owes the obligation to the Creditor;
There is a valid security interest from which relief from the stay may be sought; or
"Cause" justifying relief from the stay.

In re Kin, 71B.R. 1011, 1015 (Bankr. C.D.Cal. 1987). After a creditor has established its prima facie case, the burden of proof shifts to the debtor to prove that there is no cause to terminate the automatic stay. 11 U.S.C. § 362(g)(2); In re Ellis, 60 B.R. 432, 435 (9th Cir. B.A.P. 1985) citing In re Gauvin, 24 B.R. 578 (9th Cir. B.A.P. 1982).

1    It is clear in the instant case that Household Finance Realty Corporation of Nevada is not

2  protected by an "equity cushion" or any other adequate protection measure.  Accordingly,

3  Household Finance Realty Corporation of Nevada has demonstrated its prima facie case that

4  cause exists "justifying relief from the automatic stay" under Bankruptcy Code § 362(d)(1).

5  Based upon the foregoing authority Household Finance Realty Corporation of Nevada is entitled

6  to an order terminating the automatic stay re: Debtor and Bankruptcy Estate. Household Finance

7  Realty Corporation of Nevada respectfully requests that the Court determine that the Creditor is

8  not adequately protected and allow the Creditor to lift the stay re: Debtor and Bankruptcy Estate

9  and secure its collateral at no further costs to the Estate and its unsecured creditors.

10

11    WHEREFORE, Household Finance Realty Corporation of Nevada, SECURED

12  CREDITOR respectfully requests:

13  1.    That relief from the automatic stay be granted to allow Household Finance Realty
      Corporation of Nevada to foreclose on its lien and/or use any and all other methods both
      contractually and statutorily to regain possessory interest and title to the subject property
14      under the note and deed of trust referenced herein and attached hereto;

15  2.    That the court waives the requirement of approval under LR 9021;

16
   3.    Award reasonable attorneys fees and costs to Household Finance Realty Corporation of
17      Nevada;

18  4.    Waive the 10 day requirement under Fed R. Bank.Pro. 4001(a)(3); and

19  5.    Award all other remedies that the Court may find reasonable and just.

20

21  DATED: _____1/15/08_____

22                          Stephanie L. Cooper, Esquire
                            Nevada Bar No. 5919
23                          THE COOPER CASTLE LAW FIRM
                            820 South Valley View Blvd
24                          Las Vegas, NV 89107
                            Attorney for Secured Creditor
25                          Household Finance Realty Corporation of Nevada

## **SECTION 362 INFORMATION SHEET**

**KATHLEEN STRADER**
DEBTOR

**07-14923-BAM**
Bankruptcy Case No.

Motion No.

**Household Finance Realty Corporation of Nevada**
MOVANT/CREDITOR

**13**
CHAPTER FILED

**214 Pocahontas Court, Henderson, NV 89014**
Property Address

NOTICE WAS SERVED ON:      Debtor: _X_ ;    Debtor's Counsel: _X_ ; Trustee: _X_
DATE OF SERVICE: _____

### EXHIBIT A

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY OF LIENS: | The EXTENT and PRIORITY OF LIENS: |
| 1st $306,604.11<br>2nd $68,299.00 (approximate)<br>Tax Lien $1,600.00 (approximate)<br>HOA Lien $2,000.00 (approximate)<br>Total Encumbrances: $378,503.11 | 1st<br>2nd<br>3rd<br>Total Encumbrances: |
| APPRAISAL OR OPINION AS TO VALUE<br>Estimated property value ranges from $286,000.00 to $296,000.00 as indicated in the Zillow estimated property value and in Debtor's own estimation in Schedule A of the voluntary petition. | APPRAISAL OR OPINION AS TO VALUE |

The Undersigned hereby certifies compliance with Local Rule 4001 as indicted by the
attached letter and confirmation.

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | DEBTOR'S OFFER OF ADEQUATE PROTECTION for the MOVANT |
|---|---|
| Amount of Note: $ 303,660.60<br>Interest Rate: 8.2800 %<br>Duration: 30 yrs<br>Payment per Month: $2,150.61<br>Date of Default: November 01, 2007<br>Amount in Arrears: $7,151.83 | SPECIAL CIRCUMSTANCES: |
| Signature: | Signature: |

JAN-09-08    09:55AM    FROM-
JAN-09-08    12:48    PROM-                                    T-282    P.006/015    F-373

20060126-0003097

Fee: $35.00
N/C Fee: $0.00

01/26/2005                    14:19:35
T20050016878

Requestor:
NEVADA TITLE COMPANY

Frances Deane                 RMS
Clark County Recorder         Pgs: 9

APN:# 178-08-813-019    05 MAY 17 AH 9: 02

0501104B30

**DEED OF TRUST**

CFS

580412

☐ If this box is checked, this Deed of Trust secures future advances.

THIS DEED OF TRUST is made this 25TH day of JANUARY ,20 05 , among the Grantor(s),
KATHLEEN R. STRADER, AN UNMARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY

(herein "Borrower"), HOUSEHOLD FINANCE REALTY CORPORATION OF NEVADA
(herein "Trustee") and the Beneficiary, HOUSEHOLD FINANCE REALTY CORPORATION OF NEVADA
a corporation organized and existing under the laws of DELAWARE whose address is,
10824 S EASTERN AVE, SUITE M, HENDERSON, NV, 89052
(herein "Lender"). Witnesseth:
The following paragraph preceded by a checked box is applicable.

☒ WHEREAS, Borrower is indebted to Lender in the principal sum of $ 303,660.60
evidenced by Borrower's Loan Agreement dated JANUARY 25, 2005 & any extensions or renewals
thereof (including those pursuant to any Renegotiable Rate Agreement) (herein "Note"), providing for
monthly installments of principal and interest, including any adjustments to the amount of payments
or the contract rate if that rate is variable, with the balance of the indebtedness, if not sooner paid, due
and payable on JANUARY 25, 2035 ;

☐ WHEREAS, Borrower is indebted to Lender in the principal sum of $ , or so much
thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated
and extensions and renewals thereof (herein "Note"), providing for
monthly installments, and interest at the rate and under the terms specified in the Note, including any
adjustments in the interest rate if that rate is variable, and providing for a
credit limit stated in the principal sum above and an initial advance of $ ;

TO SECURE to Lender the repayment of the indebtedness, including future advances, evidenced
by the Note, with interest thereon at the applicable contract rate (including any adjustments to the
amount of payment or the contract rate if that rate is variable) and other charges; the payment of all
other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of
Trust; and the performance of the covenants and agreements of Borrower herein contained, Borrower, in
consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and
conveys to Trustee, in trust with power of sale, the following described property located
in the County of CLARK State of Nevada:

CONTINUED ON EXHIBIT A-LEGAL DESCRIPTION

10-24-03 DOT                                                      NV001391

║█ 61673EASA383NV89052NVMH 138 10║    KSTRADER         N         ORIGINAL

**EXHIBIT "B"**

(Page 2 of 8)

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note, including any variations resulting from changes in the Contract Rate, and late charges and as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law and only if requested in writing by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. Application of Payments. Unless applicable law or the Note provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable at the applicable Contract Rate, and then to the principal of the Note.

10-24-03 DOT                                                                                          NV001332



(Page 3 of 6)

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and such other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals thereof shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the applicable Contract Rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

10-24-08 DOT

NV001393



*KS16796A8A533NVR80DL4W0013950W*              NOTRADER              N              ORIGINAL

(Page 4 of 8)

8. Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. Borrower Not Released; Forbearance by Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower and all other parties who are or hereafter become secondarily liable shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the right hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws of the jurisdiction in which the Property is located shall apply except where such laws conflict with Federal law, in which case, Federal law applies. Specifically, this Deed of Trust and any amendments thereto shall be governed by the provisions of Senate Bill No. 222 enacted by the 1985 Nevada legislature. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust, if requested, at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

10-24-03 HOT                                                                                                    NV001994

(Page 5 of 8)

16. **Transfer of the Property.** If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Deed of Trust, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of a Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer or disposition described in regulations prescribed by the Federal Home Loan Bank Board, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Deed of Trust unless Lender releases Borrower in writing.

17. **Acceleration; Remedies.** Except as provided in paragraph 16 hereof, or as otherwise required by law, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 20 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of any event of default and of Lender's election to cause the Property to be sold. Lender shall mail a copy of such notice to Borrower as provided in paragraph 12 hereof. Trustee shall record a copy of such notice in the county in which the Property is located. Trustee shall publish a notice of sale for the time and in the manner provided by applicable law and shall mail copies of such notice of sale in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's certificate describing the Property and the time when the purchaser will be entitled to Trustee's deed thereto. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the persons legally entitled thereto.

10-24-03 DOT                                                        NV001385



*NV001385*                ASTRAGER                               ORIGINAL

(Page 6 of 8)

18. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof including but not limited to reasonable attorney's fees and Trustee's expenses and withdrawal fee; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. **Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. **Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to convey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

21. **Substitute Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

22. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

23. **Arbitration Rider to Note.** The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Deed of Trust.

10-24-03  007                                                                    NVUA1391


*516730A8A989N7908BNV0A13018***STRADER                              ORIGINAL

JAN-09-08  09:56AM  FROM-
JAN-08-08  12:49  FROM~

(Page 7 of 8)

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEED OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_Kathleen R Strader_

Kathleen R. Strader                    —Borrower

_____       —Borrower

STATE OF NEVADA,

COUNTY OF __Clark__

On this __25th__ day of __Jan.__, 20 __05__, before me personally appeared __Kathleen R. Strader__ know to me (or satisfactorily proven) to be the person described in and who executed the foregoing instrument, and acknowledged that __she__ executed the same as __her__ free act and deed.  (he/she/they)          (his/her/their)

My Commission expires:

__1-9-08__

_Carol S. Hecht_
                                        Notary Public

CAROL S. HECHT
Notary Public, State of Nevada
Appointment No. 03-85745-1
My Appt. Expires Jan 9, 2008

STATE OF NEVADA,

COUNTY OF _____

On this _____ day of _____, 20 _____, before me personally appeared _____, know to me (or satisfactorily proven) to be the person described in and who executed the foregoing instrument, and acknowledged that _____ executed the same as _____ free act and deed.  (he/she/they)          (his/her/their)

My Commission Expires:

_____
                                        Notary Public

10-24-03 DOT                                        NVQA1992



ORIGINAL

(Page 8 of 8)

### REQUEST FOR RECONVEYANCE

**TO TRUSTEE:**

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: _____ _____ _____

————————————— [Space Below This Line Reserved For Lender and Recorder] —————————————

Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126

10-24-03 DOT                                                                 NVDA1295



ORIGINAL

**EXHIBIT A (PAGE 1)**

LOT SIXTY-SIX (66) IN BLOCK TWO (2) OF TRAILSIDE POINT-UNIT
4, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 42, OF PLATS,
PAGE 20, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
COUNTY, NEVADA.

JAN-09-08  09:54AM  FROM-
JAN-09-08  12:57   FROM-

**LOAN REPAYMENT AND SECURITY AGREEMENT (Page 1 of 3)**

**LENDER (called "We", "Us", "Our")**
HOUSEHOLD FINANCE REALTY CORPORATION OF NEVADA
10824 S EASTERN AVE
SUITE M
HENDERSON NV 89052

**BORROWERS (called "You", "Your")**          **LOAN NO:**    680412-142▒▒ S43
STRADER, KATHLEEN R
SS# 551152605
214 POCAHONTAS CT
HENDERSON NV 89014



| DATE OF LOAN | FIRST PAYMENT DUE DATE | OTHERS SAME DAY OF EACH MONTH | FINAL PAYMENT DUE DATE | | CONTRACT RATE PER YEAR |
|---|---|---|---|---|---|
| 01/26/2005 | 02/26/2006 | | 01/26/2035 | | 8.280 % |
| | AMOUNT FINANCED $ 292,997.48 | | PRINCIPAL $ 303,860.80 | | OFFICIAL FEE $ 25.00 |
| | | | CLOSING FEE 135.00 | | |
| LIFE INS PREMIUM $ NONE | DISABILITY INS PREMIUM $ NONE | | INS PREMIUM NONE | | |
| INS INS PREMIUM $ NONE | | | | | |
| LAST INSTALLMENT $ 2,287.71 | MONTHLY INSTALLMENT $ 2,287.71 | | | | ORIGINATION FEE/POINTS $ 10,628.12 |
| | | | | | TERM PERIOD 360 |
| | | | | | PREPAYMENT PENALTY YES |

YOU ARE GIVING US A SECURITY INTEREST IN THE REAL ESTATE LOCATED AT THE ABOVE ADDRESS.

**REQUIRED INSURANCE.** You must obtain insurance for term of loan covering security for this loan as indicated by the word "YES" below, naming us as Loss Payee:

YES     Title insurance on real estate security.
YES     Hazard insurance on real estate security.
        Physical damage insurance on vehicle listed under "Security" above if "Y" appears under "Insured".
        Physical damage insurance on other property listed under "Security" above if "Y" appears under "Insured".
        You may obtain any required insurance from anyone you choose and may assign any other policy of insurance
        you own to cover the security for this loan.
        (See "Security" paragraph above for description of security to be insured.)

**NOTICE: THE FOLLOWING PAGES CONTAIN ADDITIONAL CONTRACT TERMS.**

12-01-04
RE/HIL OPT FPP

NVB75991

KS16736AGASB3CEAS000KNVB7699 KNNSTRADER          K          ORIGINAL

JAN-09-08  09:54AM  FROM-
JAN-08-08  12:47    FROM-                                        800 020 4135

## LOAN REPAYMENT AND SECURITY AGREEMENT  (Page 2 of 3)

**PAYMENT.** In return for this loan, you agree to pay us the Principal [Amount Financed and Points (all shown on page one)] plus Interest in monthly payments as stated on page one, computed by the simple interest method on the unpaid balances of Principal at the Contract Rate (subject to any adjustment under the Adjustment to Contract Rate section below) plus any monthly insurance premium, if elected, until fully paid. Principal is Amount Financed plus Points and Closing Fee. The term Points means the Origination Fee (Points) shown on page one. You shall pay us monthly payments, at our business address or other address given you. If more than one Borrower is named on page one, we may enforce this Contract against all, or any Borrowers, but not in a combined amount greater than the amount owed. Payments are applied in the following order: late charges, interest at the Contract Rate for the actual time outstanding, principal, and insurance. For any past due amounts, payments will be applied to the most delinquent monthly installment first, in the same order shown above, until all past due monthly installments are paid in full.

**DATE ON WHICH INTEREST BEGINS.** If you do not cancel this loan, the date on which Interest begins, payment due dates, and effective date of insurance purchased are postponed by the number of days from this contract's date to date you receive this loan.

**ADJUSTMENT TO CONTRACT RATE.** The Contract Rate, as shown on page one, will decrease by one quarter of one percent (.25) beginning with the thirteenth (13th) month after every twelve (12) consecutive month period where all payments were made in full within 30 days of their due date. Up to maximum of twelve (12) Contract Rate reductions are available during the term of the loan. For each Contract Rate reduction, the monthly installment payment will be reduced accordingly. Notwithstanding anything to the contrary in this paragraph, you will not receive any Contract Rate reductions or the reduced monthly payment after four periods of delinquency. A "period of delinquency" begins when you fail to make a payment in full within 30 days of the due date and ends when you have no payments that are outstanding for more than 30 days past their due date.

**PAY-OUTS.** You agree to pay-outs of Amount Financed as shown on Truth-In-Lending disclosure form. If pay-outs change because loan closing is delayed, (a) you shall pay additional amounts due at closing, or (b) your cash or check will be reduced to cover additional pay-outs.

**PREPAYMENT.** Subject to the Prepayment Penalty described below, you may prepay any or all of your loan at any time. In any event, if you fully pay before the final payment due date, the amount you owe will be reduced by unearned credit insurance charges, if any. If you prepay before the final due date, Points and Closing Fee are fully earned when this loan is made and you will not receive a refund of that part of the Finance Charge consisting of Points and Closing Fee.

**PREPAYMENT PENALTY.** If "YES" is printed in the Prepayment Penalty box on page one of this Agreement, you agree to the following penalty. If you prepay in full within two (2) years of the date of this loan shown on page one, you agree to pay a prepayment penalty equal to six (6) months Interest at the Contract Rate (as stated on page one) of the unpaid principal balance. No prepayment penalty will be imposed (a) if this loan is refinanced by another loan with us; (b) after two (2) years; (c) if the loan is prepaid from the proceeds of any insurance; or (d) if we sue you.

**LATE CHARGE.** If you don't pay any payment in full within 10 days after it's due, you will also pay a late charge equal to 6% of the Monthly Installment or $25.00, whichever is greater.

**BAD CHECK CHARGE.** If you give us a check that is returned unpaid, you will pay a bad check charge of $25.

**SECURITY.** You agree to give us a security interest in the real estate as described in the Mortgage/Deed of Trust.

**PROPERTY INSURANCE:**

**A. YOUR OBLIGATION TO INSURE.** You shall keep the structures located on the real property securing this loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is cancelled or expires while the loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below.

### NOTICE:  THE FOLLOWING PAGE CONTAINS ADDITIONAL CONTRACT TERMS.

12-01-04
RE/PHL  OPT  PPP                                              NV876692



ORIGINAL

## LOAN REPAYMENT AND SECURITY AGREEMENT (Page 3 of 3)

**B. LENDER'S RIGHT TO PLACE HAZARD INSURANCE.** You authorize us, at our option, to obtain coverage on the Property in an amount not greater than the outstanding balance of principal and interest on the loan or, if known to be less, the replacement value of the Property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance and add the insurance charges to your loan. The insurance charges will be added to the unpaid balance of the loan which accrues interest at the Contract Rate. The addition of the insurance charges due might increase the amount of your final installment. The cost of Lender placed hazard insurance might be higher than the cost of standard insurance protecting the property. The Lender placed insurance will not insure the contents of the property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit (e.g. commission, service fee, expense reimbursement, etc.) from the placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your loan.

**CREDIT REPORTING AND CUSTOMER INFORMATION PRACTICES.** If you fail to fulfill the terms of your credit obligation, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. You agree that our supervisory personnel may listen to telephone calls between you and our representatives in order to evaluate the quality of our service to you. You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by Applicable Law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents.

**ALTERNATIVE DISPUTE RESOLUTION AND OTHER RIDERS.** The terms of the Arbitration Agreement and any other Riders signed as part of this loan transaction are incorporated into this Agreement by reference.

**APPLICABLE LAW.** This loan is made under the Nevada Mortgage Companies Act, Chapter 645B, Sections 645B.010 to 645B.230, Nevada Revised Statutes (NRS), the Nevada interest and usury statute Chapter 99, Sections 99.040 to 99.055, NRS and Title 52 of the Nevada Revised Statutes (NRS) relating to high cost home loans if this loan qualifies as such a loan. If this loan is a first mortgage, it is a federally related loan authorized by Section 501(a), Part A, Title V, Public Law 96-221, now known as Section 1735f-7(a), Title 12, United States Code.

**INSURANCE.** Optional credit insurance and any required insurance disclosures are attached to this Agreement and are incorporated herein by reference.

**YOU HAVE RECEIVED A COMPLETE COPY OF THIS AGREEMENT AND THE TRUTH-IN-LENDING DISCLOSURES.**

BORROWERS:

_Kathleen R Strader_ _____ (SEAL)

_____ (SEAL)

_____ (SEAL)

WITNESS:

_Carol S. Hecht_ _____



3 beds, 3.0 baths, 1,466 sq ft

**Zestimate®: $286,000**

What's This?

**My Estimate:**

Views: 9

## Bird's Eye View



## Home Info

### Public Facts:

Single family
3 beds
3.0 bath
1,466 sqft
Lot 6,098 sqft
Built in 1989

### Neighborhood & School:

**Neighborhood:**
Green Valley North
**School District:**
--

## Charts & Data

**ZESTIMATE®: $286,000**
- Value Range: $265,980 - $314,600
- 30-day change: -$4,500
- *Zestimate updated: 01/03/2008*

### Last sale and tax info

**Sold 06/24/2004:**
 $112,400
**2007 Property Tax:**
 $1,699



## EXHIBIT "C"

Case:  07-14923-bam        Doc #:  1      Filed:  08/09/2007        Page:  9 of 36

Form B6A
(10/05)

In re    **KATHLEEN R STRADER**                                          Case No. _____
                                            ,
                              Debtor

## SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Location: 214 POCAHONTAS CT, HENDERSON NV Purchased 4-1-90** | **Fee simple** | - | **296,000.00** | **364,341.00** |

|  | | |
|---|---|---|
| Sub-Total > | **296,000.00** | (Total of this page) |
| Total > | **296,000.00** | |

**0**   continuation sheets attached to the Schedule of Real Property        (Report also on Summary of Schedules)

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

THE COOPER CASTLE LAW FIRM                    820 South Valley View Blvd
fka THE COOPER CHRISTENSEN LAW FIRM, LLP      Las Vegas, Nevada 89107
                                              Telephone (702) 435-4175
                                              Facsimile (702) 435-4181

January 11, 2008                    Via Facsimile (702) 269-8139

Sam Benevento
1945 E Warm Springs Road
Las Vegas, NV 89119

RE:    Debtor: KATHLEEN STRADER
       Loan No.: 680412-00-142543
       Bankruptcy No.
       Bankruptcy Chapter:
       Bankruptcy Filed On: August 09, 2007
       Our File No.: 08-01-0159

Dear Attorney Benevento:

On January 10, 2008, we received authorization from our client, Household Finance Realty
Corporation of Nevada, to act on their behalf on the above referenced loan.

**Please see attached worksheet in compliance with Local Rule 4001.**

Your anticipated cooperation in this matter is greatly appreciated.  If you have any questions,
please do not hesitate to contact us.

Very truly yours,

THE COOPER CASTLE LAW FIRM

Stephanie L. Cooper, Esquire

Encl.
SC/yy

cc: Rick A. Yarnall Sent Via Facsimile (702) 853-4513

# CHAPTER 13 LOCAL RULE 4001 Compliance Worksheet

| | | | |
|---|---|---|---|
| **Loan:** | 680412-00-142543 | **Chapter:** 13 | |
| **Mortgagor:** | KATHLEEN STRADER | **BK #:** 07-14923-BAM | |
| **Our Client:** | Household Finance Realty Corporation of Nevada | **Our File #:** 08-01-0159 | |

Your clients' current arrearage is:        $6,651.83

   3   monthly payments at      $2,150.61       $6,451.83
November 2007 through January 2008
Attorney Fees (Total Attorney's Fees will increase
above and beyond this stated amount if Secured      $200.00
Creditor has to file a Motion for Relief)

    Total Arrearage           $6,651.83

If your client disputes this arrearage, please check here:     ☐

Please note that our records reflect that the above payment arrearage is correct. Disputing the arrearage or attorneys fees will require that a motion be filed in order to allow the court to adjudicate the payment dispute. Requesting breakdowns of fees and costs or back up also will require that we file a motion to protect our clients' interest. You must obtain and provide to Secured Creditor copies of all disputed payments and we will obtain a payment history. We will contact you prior to the hearing date so that the payments and payment history can be reconciled.

Adequate Protection Order

If your clients desire an adequate protection order please check here:     ☐

(Please note that if you dispute payments or the amount of the attorneys fees and you want an adequate protection order for an amount less than the total amount of the arrearage set forth above then we will set a hearing to allow the Judge to resolve the disputed amount.)

# Terms under which you may request an adequate protection order:

One payment up front by (date)_____(no more than 10 days out) and Remainder of
Arrearage plus attorneys fees over six months with a ten-day default provision (each
default letter triggers a $100.00 fee)

☐

The Debtor will pay all arrearages in a lump sum payment on or before _____
(timely Adequate Protection Order will be issued with default provision for all future

payments)

☐

The Debtor will surrender the property please prepare a Stipulation and forward for

signature.

☐

If you desire any terms other than those set forth above please indicate the same:

We will not exceed repayment over more than six months, payment of less than the arrearage
amount, loan modifications, or putting post-petition arrearage through the plan. We must have
some submission in writing of your intent to enter an adequate protection order based on the
arrearage amount specified above under one of the above options for adequate protection or we
WILL file the Motion for Relief from Stay 48 hours after confirmation of fax of this letter. Your
client will avoid the filing fee by working these matters out prior to the filing of a motion.

We will not accept telephone tag or issues regarding our telephone system as a means of
delaying the filing of a motion and ask that you either fill out this sheet OR send written
confirmation via fax to (702) 435-4181.

If you have chosen an APO on any of the above terms and the same is acceptable, we will
prepare the Adequate Protection Order and forward it to you within one business day of your
written request. Please sign the adequate protection order and fax a copy of the same and mail or
courier the original to our office. If you do not sign the Adequate Protection Order and return it
to us within two (2) calendar days, we will set the motion for hearing. If you fax your signature
and fail to return the original, we will submit your faxed signature with an affidavit and have the
order entered by the Court.

Attorney Signature: _____ Date: _____
This motion will be filed on_____ **January 14, 2008 at 5:00 p.m.**_____

```
                        *********************
                        ***   TX REPORT   ***
                        *********************


        TRANSMISSION OK

        TX/RX NO            3804
        CONNECTION TEL                      2698139
        CONNECTION ID
        ST. TIME           01/11 12:01
        USAGE T            00'35
        PGS. SENT              3
        RESULT             OK
```

THE COOPER CASTLE LAW FIRM                    820 South Valley View Blvd
fka THE COOPER CHRISTENSEN LAW FIRM, LLP      Las Vegas, Nevada 89107
                                              Telephone (702) 435-4175
                                              Facsimile (702) 435-4181


January 11, 2008                    Via Facsimile (702) 269-8139


Sam Benevento
1945 E Warm Springs Road
Las Vegas, NV 89119


RE:   Debtor: KATHLEEN STRADER
      Loan No.: 680412-00-142543
      Bankruptcy No.
      Bankruptcy Chapter:
      Bankruptcy Filed On: August 09, 2007
      Our File No.: 08-01-0159


Dear Attorney Benevento:

On January 10, 2008, we received authorization from our client, Household Finance Realty
Corporation of Nevada, to act on their behalf on the above referenced loan.

**Please see attached worksheet in compliance with Local Rule 4001.**

Your anticipated cooperation in this matter is greatly appreciated.  If you have any questions,
please do not hesitate to contact us.

Very truly yours,

THE COOPER CASTLE LAW FIRM

```
                    ************************
                    ***    TX REPORT    ***
                    ************************


    TRANSMISSION OK

    TX/RX NO           3805
    CONNECTION TEL                    8534513
    CONNECTION ID
    ST. TIME           01/11 12:02
    USAGE T            01'13
    PGS. SENT          3
    RESULT             OK
```

THE COOPER CASTLE LAW FIRM                    820 South Valley View Blvd
fka THE COOPER CHRISTENSEN LAW FIRM, LLP      Las Vegas, Nevada 89107
                                              Telephone (702) 435-4175
                                              Facsimile (702) 435-4181


January 11, 2008                    Via Facsimile (702) 269-8139


Sam Benevento
1945 E Warm Springs Road
Las Vegas, NV 89119

RE:    Debtor: KATHLEEN STRADER
       Loan No.: 680412-00-142543
       Bankruptcy No.
       Bankruptcy Chapter:
       Bankruptcy Filed On: August 09, 2007
       Our File No.: 08-01-0159


Dear Attorney Benevento:

On January 10, 2008, we received authorization from our client, Household Finance Realty
Corporation of Nevada, to act on their behalf on the above referenced loan.

**Please see attached worksheet in compliance with Local Rule 4001.**

Your anticipated cooperation in this matter is greatly appreciated. If you have any questions,
please do not hesitate to contact us.

Very truly yours,

THE COOPER CASTLE LAW FIRM